**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MELISSA COFFEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14 C 4365 |
| ) | |
| DSW SHOE WAREHOUSE, INC. a/k/a ) | Judge Rebecca R. Pallmeyer |
| DSW, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

While working as an assistant store manager for Defendant DSW Shoe Warehouse, Plaintiff Melissa Coffey observed customers she suspected of shoplifting and called the police. DSW promptly terminated her employment, citing a company policy prohibiting employees in her position from calling law enforcement. In this lawsuit, Plaintiff alleges that her firing violated the Illinois Whistleblower Act ("IWA"). 740 ILCS 174/15. The parties have filed cross-motions for summary judgment on the question of Defendant's liability [27] [31] and Plaintiff requests a hearing on damages.[1] Defendant argues, among other things, that the IWA does not apply here because Plaintiff exposed a third party's misdeeds rather than her employer's. Even if the IWA applies, however, Defendant contends that Plaintiff failed to mitigate her damages by diligently seeking a new job. For the reasons stated below, the court concludes that the IWA's protections are not so narrow as Defendant suggests and that Plaintiff made reasonable efforts to find employment. Plaintiff's motion for partial summary judgment [31] is therefore granted, and Defendant's motion for summary judgment [27] is denied.

---

[1] In her memorandum in support of her summary judgment motion, Plaintiff also argues that the declaration of DSW district manager Donna Fruehe [30-3] should be stricken as self-serving. (Pl.'s Mem. [37] at 3–4.) Plaintiff never formally moved to strike the declaration. Regardless, this issue is moot given the court's grant of summary judgment in Plaintiff's favor.

## **BACKGROUND**

The facts of this case are largely undisputed. Defendant hired Plaintiff on May 3, 2009 as an assistant store manager for its store in Skokie, Illinois. (Def.'s Rule 56 Statement of Undisputed Facts [29], hereinafter "DSUF", ¶¶ 5–6.) Defendant has a Shoplifting and No-Apprehension Policy ("the Policy") which states:

> Under no circumstances is law enforcement, mall security or any other third party to be called to notify or respond to a suspected shoplifting/theft incident. If special circumstances exist (such as a high dollar theft, grab and run, etc.), immediately contact your RLPM [Regional Loss Prevention Manager] for direction. The RLPM is the only individual who may authorize an exception. This authorization must be obtained prior to any call to law enforcement.

(*Id.* ¶ 17; Pl.'s Rule 56 Statement of Undisputed Facts [33], hereinafter "PSUF", ¶ 3.) The Policy directs employees to use customer service to deter shoplifting in lieu of contacting law enforcement by, for example, providing immediate one-on-one attention to a customer suspected of attempting to shoplift. (DSUF ¶ 18.) Defendant "maintains a zero-tolerance policy" with respect to employee violations of the Policy. (Fruehe Decl. [30-3] ¶ 13.)

Although Plaintiff admits that her conduct (described more fully below) violated this Policy, she denies having been told about it beforehand. (*Id.* ¶ 47.) The Policy is not included in Defendant's employee handbook or distributed to each new employee, nor is it included in the "checklist" given to store managers of necessary paperwork for new employees to review upon their hiring. (PSUF ¶¶ 4, 6; Fruehe Dep. [30-2] at 78.) A copy of the Policy is, however, available at every DSW store, and store manager do ordinarily receive training related to the Policy. (DSUF ¶¶ 26–27.)

While at work on the evening of August 28, 2009, Plaintiff was approached by Alvina[2], one of the store's associates. Alvina told Plaintiff that a group of three or four female customers whom Alvina suspected of shoplifting from the store on August 24, 2009 had just returned. (*Id.* ¶ 29.) This was the first Plaintiff had heard of the alleged shoplifting incident on the 24th. (*Id.*)

---

[2] The parties refer to Alvina exclusively by her first name. (Coffey Dep. [30-1] at 70; Freuhe Dep. [30-2] at 66.)

Plaintiff noticed that the individuals identified by Alvina were not behaving like legitimate customers who "normally [look] at the merchandise and gaz[e] at it or touch[] it." (PUSF ¶ 16–17.) Instead, the group walked around the store "on their cell phones" with their eyes on the store's employees rather than its goods. (*Id.* ¶ 17.) Plaintiff also noticed a running car parked just outside of the store. (*Id.* ¶ 18.)

Based on these circumstances, Plaintiff "made an executive decision to call the police." (DSUF ¶ 31.) She grabbed her store-issued walkie-talkie, which connected her to all the Skokie store's employees, and said, to no one in particular, "I think we're going to call the police." (*Id.* ¶ 30.) Interpreting this as a directive, store associate Carmen Torres, one of Plaintiff's subordinates, called 911 and requested that the police conduct a "walk-through" of the store. (*Id.* ¶ 33; PSUF ¶ 22.) Torres apparently was not disciplined for placing the call. (*See* Fruehe Dep. at 55.)

After Torres placed her call but before the police entered the store, all but one of the suspected shoplifters left the premises in the running car that Plaintiff had noticed earlier. (DSUF ¶ 34; PSUF ¶ 24.) The officer who arrived on the scene questioned the lone remaining suspect, later identified as Natasha Richards, but apparently no arrest was made. (DSUF ¶ 35, 38.) Plaintiff suspected Richards of shoplifting only because Richards was using her cell phone and entered the store at the same time as the group identified by Alvina. (*Id.* ¶ 37.)

Shortly after the police officer left the store that evening, Plaintiff e-mailed DSW District Manager Donna Fruehe, informing her that Plaintiff had asked the police to perform a walk-through of the store in response to a suspected shoplifting (i.e., she took responsibility for Torres's phone call). (DSUF ¶ 39; PSUF ¶ 32.) Fruehe then instructed Plaintiff[3] to provide a written statement summarizing her account of the August 28 incident; Plaintiff complied, writing that she "ask[ed] for 911 to be called." (PSUF ¶ 33.)

---

[3] It is not clear whether this was an oral or written instruction. (*See* Coffey Dep. at 108–09; Fruehe Dep. at 66.)

Three days later, on August 31, DSW customer service representative Stacy Ross-Fox e-mailed Fruehe to report that Richards had called the customer service unit and expressed dismay that Plaintiff had not apologized for calling the police. (DSUF ¶ 43.) On September 2, Fruehe and the Skokie store's acting manager, Pat O'Connor, spoke with Torres, who said that Plaintiff had asked her to call 911 because there were shoplifters in the store. (*Id.* ¶ 34; Fruehe Dep. at 39.) That same day, Fruehe fired Plaintiff via a written termination notice, citing Plaintiff's violation of the Policy. (PSUF ¶ 35; DSUF ¶ 49)

Plaintiff filed a complaint with the Equal Employment Opportunity Commission on October 9, 2009, alleging that she was terminated based on her race and/or age. (*Id.* ¶ 51.) The record does not establish how this complaint was resolved. Plaintiff contends that she completed "over a thousand job applications" after her termination from DSW in September 2009 until finding a job in May 2012.[4] (PSUF ¶ 41) She limited her job search to positions within 30 miles of Chicago, but she applied to jobs both within and outside the retail industry and did not confine her search to a minimum level of compensation. Plaintiff spent approximately 25 hours per week on her job search (*id.* ¶ 53), exclusively using web-based job sites as opposed to newspaper's employment ads. (PSUF ¶¶ 44; Coffey Dep. at 139). The record does not indicate whether Plaintiff collected unemployment insurance at any point, but she never turned down a job that was offered to her. (PSUF ¶ 46.)

During her time of unemployment, Plaintiff took online college classes through Argosy University. She started as a full-time student in 2010, graduating with a B.A. in Psychology in November 2013. (Coffey Dep. at 18.) At the time of her deposition in January 2014, Plaintiff also expected to complete a master's degree in Human Resources in March 2015 and then enroll in a psychology Ph.D. program, both through Argosy. (*Id.*)

---

[4] Defendant requested that Plaintiff produce these applications, but Plaintiff has failed to do so. (Def.'s Resp. to Pl.'s R. 56.1 Statement [39] at 15.)

Between May 2012 and March 2014, while enrolled in online undergraduate and then master's classes, Plaintiff worked as an overnight customer service manager at Wal-Mart, earning approximately $10 per hour, less than half of the hourly rate she had earned at DSW ($21.10 per hour). (PSUF ¶¶ 48–50.) In October 2014, she accepted an unpaid internship with the Cook County Department of Homeland Security and Emergency Management in hopes of moving into a paid position there. (*Id.* ¶ 54.) Since March 24, 2015, she has worked as a full-time Labor Assistant in the Cook County Health and Hospital System. (*Id.* ¶ 55.)

Plaintiff brought this action in the Circuit Court of Cook County on May 12, 2014 (Compl. [1-A]), within Illinois' five-year statute of limitations, *see* 735 ILCS 5/13-205. On June 12, 2014, Defendant removed the case to this court pursuant to 28 U.S.C. § 1446. (Notice of Removal [1].) Plaintiff is a citizen of Illinois. (Compl. ¶ 2.) Defendant is incorporated in Missouri and has its principal place of business in Ohio. (Donohew Decl. [1-B] ¶ 4.) Plaintiff alleges an amount in controversy in excess of $75,000. (Compl. at 1.) Therefore, removal was proper and the court exercises diversity jurisdiction over this case, pursuant to 28 U.S.C. § 1332.

## DISCUSSION

The IWA creates a private cause of action when an employer "retaliate[s] against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15; *see also* 740 ILCS 174/30 ("If an employer takes any action against an employee in violation of Section 15 or 20, the employee may bring a civil action . . ."). The IWA also prohibits an employer from enforcing any policy "preventing an employee from disclosing information to a government or law enforcement agency" if the employee reasonably believes that the information discloses a violation of state or federal law. 740 ILCS 174/10. A plaintiff alleging retaliatory discharge, of which IWA suits are a species, must mitigate her damages for lost wages; failure to do so constitutes an available affirmative

5

defense. *Holland v. Schwan's Home Serv., Inc.*, 372 Ill. Dec. 504, 548, 992 N.E.2d 43, 87 (5th Dist. 2013) (citing *Rozny v. Marnul*, 43 Ill. 2d 54, 73, 250 N.E.2d 656, 666 (1969)).

Plaintiff argues that her termination clearly falls within the IWA's text: she was retaliated against (fired) for disclosing a possible violation of state law (retail theft) to a law enforcement agency (Skokie's police department). Defendant counters that (1) Plaintiff did not disclose the violation herself, but rather Torres did; (2) the IWA's legislative history and public policy concerns strongly suggest that the statute was intended to cover only situations in which the retaliated-against employee was revealing her *employer's* violation, rather than a third party's; (3) it was not reasonable for Plaintiff to believe that Richards was attempting to shoplift; and (4) Plaintiff failed to mitigate her damages.[5]

## I.  Identifying the Purported Whistleblower

Defendant argues, first, that Plaintiff cannot prevail because she was not the person who made the disclosure to the Skokie police. This argument merits only brief discussion.

Torres was the employee who actually dialed 911, evidently at Plaintiff's behest, but this distinction is immaterial. Whether a plaintiff "reported directly to a government agency or relayed information through another person is irrelevant to questions of whether the motive of [a] defendant was retaliatory and whether the intent of [the plaintiff] was to blow the whistle." *Michael v. Precision Alliance Group, LLC*, 351 Ill. Dec. 890, 897, 952 N.E.2d 682, 689 (5th Dist. 2011). And, regardless of who placed the 911 call, the parties agree that Plaintiff disclosed information about the suspected shoplifting to a police officer when the officer arrived. Most importantly, Defendant terminated Plaintiff because she violated the Policy, essentially conceding that it was Plaintiff's conduct, not that of a subordinate, that moved Defendant to act.

---

[5] In addition to these arguments, Defendant suggests that Plaintiff's claim "fails because, based on her EEOC charge, Plaintiff's termination was based on her race and/or age, and not on any report protected under the IWA." (Def.'s Mem. at 8-9.) This contention warrants minimal attention. Plaintiff's EEOC charge claimed that she was fired for violating the Policy while other, younger employees (e.g., Torres) were not terminated for the same infraction. (DSUF ¶ 51.) But Plaintiff's EEOC charge is in no way inconsistent with her claim under the IWA, and it has no bearing on the instant case.

Defendant's argument that the IWA does not apply because Plaintiff did not call 911 herself is unavailing.

## II.     The IWA's Applicability to Third-Party Lawbreaker Situations

Defendant next argues that the IWA does not apply where, as here, the plaintiff has disclosed a possible violation of the law by a third party, rather than misconduct by her employer. For support, Defendant points to comments made by three state legislators who apparently believed that the IWA was intended to encourage do-gooders to reveal to authorities what they know about their employers' wrongdoing. (Def.'s Mem. at 6-7.) For instance, during discussion on the House floor, Representative Sidney Mathias stated that "The idea behind this Bill is obviously a good idea and we want to have whistleblowers and we want to make sure that our employers follow the law." H.R. 93-63, Reg. Sess. at 89 (Ill. May 22, 2003). But Defendant's reliance on these statements is overblown. For one thing, none of the legislators it quotes were speaking about the question of whether the IWA would protect individuals in Plaintiff's situation. In fact, that issue apparently was not taken up by the General Assembly at all. And nothing in the statutory language or the legislative history suggests that legislators intended to limit the IWA's protections to *only* those situations in which an employee blows the whistle on her employer.

Moreover, the court sees no ambiguity in the statutory language. The IWA bars retaliation against any person who provides information to law enforcement so long as that person "has reasonable cause to believe that the information discloses a violation . . . ." 740 ILCS 174/15. When a statute's text is unambiguous, this court must construe it in accordance with its plain meaning. *United States v. Rosenbohm*, 564 F.3d 820, 823 (7th Cir. 2009) ("If the language of a statute is clear and unambiguous, 'in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'") (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981)). Illinois courts adhere to this principle, as well, and have enforced the plain meaning rule with respect to the IWA itself. *See*,

7

*e.g.*, *Brame v. City of North Chicago*, 353 Ill. Dec. 458, 460, 955 N.E.2d 1269, 1271 (2d Dist. 2011) (holding that the Act permits suit in which plaintiff disclosed violation to employer itself, where employer was law enforcement agency).

Had state legislators truly wished to limit the Act's reach as Defendant proposes, they could have done so simply by referring in the statutory text to information that "discloses the *employer's* violation," rather than "discloses *a* violation." 740 ILCS 174/15 (emphasis added). Defendant implies that Plaintiff's interpretation constitutes an "absurd result" obviously not intended by the legislature, but this court disagrees. The General Assembly could well have chosen broader language deliberately; the legislature might reasonably have intended to permit whistleblower suits where, for example, a retaliatory employer sought to stifle the disclosure of damaging information about the employer's lawbreaking friend, family member, or political or economic ally. This conclusion is supported by the fact that Illinois courts have applied the IWA where a plaintiff disclosed potential wrongdoing on the part of a co-worker rather than his employer. *See Nason v. Rockford Park Dist.*, No. 2-13-0364, 2014 WL 1779344, at *5 (Ill. App. Ct. 2d Dist. May 1, 2014) (affirming trial court's denial of defendant's motion to dismiss where plaintiff was fired from police department after reporting fellow officer's falsification of timesheets). The court declines to impose limitations on the unambiguous language adopted by the General Assembly.

Nor is the court moved by Defendant's contention that imposing liability in these circumstances would undermine Illinois' public policy in favor of at-will employment. The tort of retaliatory discharge "is an exception to the general rule that an 'at-will' employment is terminable at any time for any or no cause." *Palmateer*, 85 Ill.2d at 128, 421 N.E.2d at 878 (citing *Pleasure Driveway & Park Dist. v. Jones*, 51 Ill. App. 3d 182, 190, 367 N.E.2d 111, 117 (3d Dist. 1977)). When state legislators codified this tort, in part via the IWA, they intentionally created a statutory exception to the at-will presumption and a cause of action stemming

8

therefrom. This court is not empowered to reweigh competing public policy interests on this issue.

### III. The Reasonableness of Plaintiff's Belief

As noted, the statute precludes retaliation against a person for reporting to law enforcement information that she "has reasonable cause to believe that the information discloses a violation of [the law]." 740 ILCS 174/15. Defendant argues that Plaintiff's decision to call the police was unreasonable under the circumstances because (1) none of the customers actually shoplifted on August 28, 2009; and (2) Plaintiff had no reason to believe that Richards in particular had violated the law. (Def.'s Mem. at 9-10.)

Defendant's arguments are off base. For purposes of Plaintiff's claim, what matters is whether a plaintiff's belief that the law had been violated was *reasonable*, not whether it was correct. *See Stebbings v. University of Chicago*, 312 Ill. App. 3d 360, 371, 726 N.E.2d 1136, 1144 (1st Dist. 2000) (citing *Howard v. Zack Co.*, 264 Ill. App. 3d 1012, 1024, 637 N.E.2d 1183, 1191–92 (1st Dist. 1994)). Plaintiff had reason to believe that the group of customers had shoplifted on August 24, that Richards was part of that group, and that the group intended to shoplift again on the night of the 28th. A co-worker, Alvina, had alerted Plaintiff to the presence of a group of customers Alvina claimed had shoplifted from the store previously. Plaintiff believed that Richards was part of this group because Richards had entered the store at the same time as the group that Alvina had identified. Nothing in the record suggests, nor does either party argue, that Plaintiff knew or should have known that she was mistaken about Richards' affiliation with the group; in fact, nothing in the record shows that Plaintiff *was* mistaken.

Paired with Plaintiff's observations of the customers' behavior and the running car parked outside the store, Plaintiff's reliance on Alvina's narrative appears to have been reasonable. Therefore, her belief that the group (including Richards) had already violated state law on August 24, and would soon do so again if not prevented from doing so, was reasonable.

9

Defendant has offered no other arguments that defeat Coffey's claim that she was terminated in violation of the IWA. The court concludes she is entitled to a finding of liability and turns briefly to the issue of damages.

IV.     **Failure to Mitigate as an Affirmative Defense**

The IWA empowers courts to provide "all relief necessary to make the employee whole, including but not limited to" reinstatement, back pay, and compensatory damages (including costs associated with litigation). 740 ILCS 174/30. Plaintiff requests back pay and both compensatory and punitive damages. (Compl. at 5.) Defendant argues that, even if Plaintiff has made out a prima facie case of retaliatory discharge under the IWA, there is a genuine dispute with respect to whether she sufficiently mitigated the damages from her termination. This court disagrees.

Plaintiff's alleged failure to mitigate is a question of fact. *See Reinneck v. Taco Bell Corp.*, 297 Ill. App. 3d 211, 218, 696 N.E.2d 839, 844 (5th Dist. 1998) (noting trial court's discretion as trier of fact in making credibility determinations relating to failure to mitigate). In order to show that a wrongfully discharged employee failed to mitigate her damages, the employer bears the burden of proving that "(1) plaintiff was not reasonably diligent in seeking other employment; and (2) a reasonable chance existed that plaintiff might have found comparable employment with the exercise of reasonable diligence." *United States EEOC v. Gurnee Inn Corp.*, 914 F.2d 815, 818 (7th Cir.1990); *see also Pokora v. Warehouse Direct, Inc.*, 322 Ill. App. 3d 870, 881, 751 N.E.2d 1204, 1214 (2d Dist. 2001) ("[T]he employer has the burden of proving that the employee failed to mitigate his damages."); *Heeren Co. v. Human Rights Com.*, 150 Ill. App. 3d 234, 242, 502 N.E.2d 17, 22 (3d Dist. 1986) (finding that a claimaint "forfeits his right to back pay if he refuses a job substantially equivalent to his former job").

Plaintiff puts forward a compelling set of facts tending to show that she conducted a thorough job search between 2009 and 2012, and again after she left Wal-Mart in 2014.

Although this evidence comes almost exclusively from Plaintiff's deposition testimony, Defendant offers nothing to rebut it. The only evidence Defendant has offered on this issue is that Plaintiff restricted her job search to online sources rather than consulting, for example, newspaper job advertisements. (Def.'s Resp. [40] at 14–15.) Defendant also argues that Plaintiff should have expanded her search to capture a wider geographical area.

A reasonable jury could disbelieve Plaintiff's testimony about the breadth of her job search. It could not, however, find that Defendant has satisfied its burden of proof, as Defendant has made no effort to rebut her testimony and thereby seriously call into question the presumption that Plaintiff was reasonably diligent. Nor has Defendant offered any evidence that Plaintiff might have found a job had she made additional efforts. For instance, Defendant did not present evidence from a potential employer that an application from Plaintiff would have resulted in a job offer, nor did Defendant offer evidence of specific job qualifications sought by employers and how they compare to Plaintiff's.

Even the two factors cited by Defendant to undermine Plaintiff's evidence are off the mark. A wrongful-discharge plaintiff must seek comparable employment (Plaintiff's uncontradicted evidence shows that she did), but courts do not require the plaintiff to find jobs through a specific medium or to search within a specified distance of her home. *See Amalgamated Bank of Chicago v. Kalmus & Assocs., Inc.*, 318 Ill. App. 3d 648, 658, 741 N.E.2d 1078, 1086 (1st Dist. 2000) ("The duty to mitigate will not be invoked as grounds for a hypercritical examination of a plaintiff's conduct."); *see also Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 89 (3d Cir. 2009) (holding that an employee "need not seek employment 'which involves conditions that are substantially more onerous than [her] previous position'" and that a 32-mile commute rendered a potential job "substantially more onerous" in light of associated transit costs (quoting *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1314 (D.C. Cir. 1972))).

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment [27] is denied and Plaintiff's motion for partial summary judgment [31] is granted.

ENTER:

Dated: October 29, 2015

REBECCA R. PALLMEYER
United States District Judge